The PTO's error in holding the 562 patent are even more straightforward in our view than the errors with regard to the first case, in large part because, as we discussed earlier, only one reference, SHANEEV, was cited either by the requester or by the board in supplying the rigid connector element. And we've already discussed why, in our view, that reference does not, in fact, disclose that element of the patent. And in addition, the board erred in rejecting HERE-Wear's evidence of aesthetics. And in this case, the board essentially said because the patent would be, because a workable device could be made, therefore it doesn't matter that the handle of SHANEEV would be intrusive and visually conspicuous. Just as a practical matter, and we're distinguishing between the two cases in part on the basis that FRETS was cited in one and not in the other, but as a practical matter, assuming this Court were to affirm the first case based on FRETS, it would really render the 562 patent pretty much valueless, wouldn't it? Because in any effort to assert that patent in litigation, the FRETS we would have held that FRETS invalidates essentially the same claim. Wouldn't that render the patent invalid? I don't want to give up on that. I'm not going to say that all of the elements... But that would be a real problem for you, wouldn't it? It could be, Your Honor, but it would be a different patent. So I don't know that collateral estoppel would apply if that's what Your Honor is getting at. I'm really thinking more of stare decisis, not necessarily collateral estoppel. Well, even... We would have said that with respect to a patent which is very similar, that FRETS is an invalidating reference. That would be a substantial impediment to litigation. It may be similar. And again, we're getting down the field here, but the claims are different. And in fact, there's a completely in-canal component in the patent, the 562. There's only an in-canal component in the other patents. Okay. Well, I don't want to keep you... No, I understand your point. It isn't... You're right. It's not squarely before us. Right. But in terms of the aesthetics, I think that the Supreme Court and KSR says that the demands of the design community and the marketplace are always relevant in determining whether or not there's a motivation to combine. So if you have clear evidence, as we had here, that the design community and the marketplace is not going to point in the direction of a device that is obtrusive and visually conspicuous... Yeah, but what is it in the claims and the patents that preclude that? The claims do not necessarily recite that, but we're talking here about the motivation of one's skills in the art to use the prior art elements in the manner suggested to come up with the invention. And this invention can be and is designed to be used as a hearing aid. The patent itself, the specification, makes clear that hybrid devices of this sort, which have a behind-the-ear component and an in-canal component, one of the main points of those devices is to be inconspicuous. But your claims are broader than just a hearing aid. Your claims are directed to a variety of devices, some of which, presumably, people wouldn't have any concern at all about the conspicuousness of the handle. But one designing a device of the sort set forth in the invention is always going to want, because that device can be used as a hearing aid... But your claim is covering something like a police radio system, a security system, for example, where nobody would care about how conspicuous the... Just even in those systems, the patent itself in the first part of the specification makes clear that security personnel, yes, they do not want people to know that they have those devices. Well, it depends, I guess. Some actually want people to know... Let me give you an analogy then. If you have evidence in a case that, for example, a patent combination of elements would be unsafe, it would produce an unsafe device, it would be unsafe to make, that would be clear evidence against the motivation to combine in that way, even if the claims themselves didn't reference safety, as most claims don't. The reason is because the design community and the marketplace value those things, and one skilled in the art looking to create a device is not going to look to create an unsafe device, and that applies regardless of whether the claims themselves recite safety. It is a concern of the design community and the marketplace, and those are concerns that the Supreme Court in KSR said were relevant. So we have a separate reason here, in addition to the lack of a sufficiently rigid connector, we also have the failure to effectively evaluate or meaningfully evaluate here where there's evidence on the aesthetic drawbacks and the impetus that one skilled in the art would have, the motivation not to combine in this way. I would also like to mention the dependent claims of the 562 patent, which are, again, separate issues. There are claims in the patent that require disposable elements, including disposable components that are electrical, like speakers and connectors. In validating the patent, the board essentially reasoned that because the prior art references didn't expressly state that their components could not be disposable, that sufficed to dispose the components of the here where patent. We think the board got its burden backwards there. The board had the affirmative burden to show that the elements of here where's patents, including the disposable elements, were present in the prior art. That burden can't be discharged by pointing to the absence of anything in the prior art saying that the disposed components could not be disposable. We have the examiner expressly stating in the record that the prior art references didn't say that their components could be disposable. You have that on pages 1320 and 1322 of the appendix. But yet, the board then says they recite disposable components because there's nothing in the reference that says that the components can't be disposable. The board needed to point to something in the reference that said that they could be. The only thing we have is references in Chenib that said that a couple of its components, the non-electrical, the acoustic coupler, and the mold, could be disposable. One skill in the art, under the court's presence, would take that as an understanding that other components that are recited in Chenib, like the speaker, would not be disposable. So that item is also missing from the patent, that disposable element, which is recited in a number of the dependent claims. We also have dependent claims that recite custom ear molds. And we had the examiner holding, finding, that Chenib teaches away. And the only two references we're dealing with in this patent that are relevant here are Reiter and Chenib, which were the combination that the board said would be apparent to one skill in the art. Chenib, the examiner said, caught away from custom ear molds. And it did so because the reference itself says in it that they could cause pain, they could cause bleeding. And the board reached a different conclusion as a matter of law, saying that the Chenib reference didn't teach away because it merely expressed a preference for non-custom ear molds. With respect, we think that Chenib expressed far more than just a preference for non-custom ear molds. It affirmatively discouraged one from using them. It talked about the fact that the custom ear molds are uncomfortable, that they have potential complications due to hematoma and bleeding, that the pieces cause, quote, discomfort, irritation, or even pain, and that it is therefore desirable, quote, to eliminate the need for custom pieces. The court's standard on teaching away is whether the reference would lead one skilled in the arts in a direction divergent from the path chosen by the inventor. Here we have a reference that expressly discourages one skilled in the arts from employing custom ear molds. So that's an additional reason we urge the court to, in effect, accept the examiner's finding on this point and not the board's, and hold that the dependent claims that require custom ear molds... Let me take that to your prior argument. You're not arguing that Earware acted as its own lexicographer in defining the word disposable? In defining the word disposable, we're not arguing that and we're not challenging the board's construction of that term, although we did below. As replaceable. As it's removed and replaced, yes. So it was still the board's burden, in this case, and the repressor's burden to identify them in the prior part where it said that their components can be removed and replaced. Yes, a whole entire hearing aid could be tossed out and you get a new one, but there's nothing in the references that talk about the components being disposable. In fact, in Shinneba it only talks about a couple of its components being disposable, and those are not the electrical components such as the speaker, which is recited in Earware's claims. So there's an absence in the prior art. There's simply a missing element in the prior art, and that's the disposable element. So that's an independent basis. Even if one were to not accept the connector arguments, you'd still have this argument that applies to the dependent claims in the case. I might save the remainder of my time for Rebecca. Thank you, Your Honor. Good morning, Your Honors. Robert Stern again for appellee hemp with me at counsel table. Again, it's John Wright and Jason Eisenberg. I'd like to go to the factual arguments that my opposing counsel seems to be making again today before this court. First of all, the motivation to combine. Again, we are dealing with claims that are very broad. They recite functional language. There's no structure that is brought into the claims through this functional language. And as we know from the 562 patent, there's many different variations of structures that perform the functions that are recited. So the motivation to combine the two references here, we need to back up and understand what happened at the patent office. There were multiple combinations presented in our reexamination request. The examiner, actually three examiners, at the central reexam unit wrote their own rejection. So the rejection we have before us today is a composite rejection made by the PTO. So the motivation to combine here is that we have Ryder and Shinab. And they were combined together. They are both hearing aids. And the claims as we talked about in the earlier argument are directed to a broader class of product, which is an earpiece auditory device. So the record doesn't include anything that would not support under APA that the motivation to combine a factual decision by the board is not supported by substantial evidence. So with regard to disposable, the board looked at this carefully and devoted I believe five pages of their decision, of their 50-page decision to the issue of disposable. They did the claim construction as my co-counsel, I mean my opposing counsel mentioned a minute ago. They did a claim construction. They were not their own lexicographer. The idea of disposable being to remove and replace. Which they've conceded. Which they've conceded. The Shinab patent does not discourage the concept of things being replaced or removed. Nor does the Ryder patent talk about the fact that you couldn't remove or replace anything. So the record is silent in that regard. But we do have claims in Shinab that point specifically to certain items that can be replaced, removed and replaced. So the board recognized that they have to look at this record from the perspective of a skilled artisan. And there was declaratory evidence in the record from Dr. Thompson for example that further explained the concept of disposable. We are told that there is nothing in the record to support this. Well there is nothing in the record to say that it can't be removed and replaced. So we have a record here that is adequately supporting what the board did in this rejection. And the person of ordinary skill in the art as the Supreme Court has stated is not an automaton. They apply common sense to situations. We have in the claims in Shinab this concept of remove or replace. So the board was appropriate in saying that the claim limitation was met. And again, it's a functional limitation that's extremely broad. What interests me about that argument is that it seems to me that the question is really is Shinab repairable or not repairable? And if something can be, if a part of it is contemplated to be removed and replaced then it looks like the inventor intends to allow it to be repaired. And if it can be repaired then those various major components would seem to be substitutable. That's correct, Your Honor. And if you think about it here, you have earwax in your ear canal no matter how careful your personal hygiene is. So the Shinab patent recognizes not only in its disclosure but in its claims that you have to be able to replace certain components of the earbud. So that's why it's claimed specifically because in normal use of a hearing aid you're going to have to do this. Let's not forget the hearing aid world is very well developed. There's incredible amount of prior art. Our original re-exam request was replete with all types of prior art combinations. And again, the examiner wrote one. So this is a very crowded field. This is a very broad claim. These claims cover everything, frankly, that's in the commercial world. So the idea that you can get a patent based on disposable? With respect to the custom ear molds, we're trying to argue teach-away. Custom ear molds, as the patent, as Shinab recognizes, is a concept that's been around long before this patent came along. The idea of custom ear molds is the one where you insert it in the ear and it fits the anatomical features of your ear canal. Everyone's ear canal has a different anatomical configuration. So a custom ear mold is created so that it fits closer to the contours of your particular canal. And the reason it's done is because there's many different kinds of hearing loss. Some are due to low sounds not being heard well. Some are due to high sounds not being heard well. Some are due to the fact that the hearing loss is so severe that you really have to crank it up, if you will, on that little speaker so that the person can hear anything at all. So the concept of a custom ear mold is that when you put this, as it's called, CIC element, completely in-canal speaker element in the ear, it conforms more to the walls of the canal. But there's no teaching or suggestion we submit, and the board found it to be the same, that Shinob discourages the use of custom ear molds. It just discusses the issues with custom ear molds. To teach away is a major finding of a reference in a very crowded art. The idea of custom ear molds not being applied to the very broad claims that are contained in the 562 patent, again, ignores the fact that the claim limitations are functional and not structural. We have to look at these claims not only from a BRI perspective, the Broadest Reasonable Interpretation, as was used by the board appropriately in doing the re-exam review, but we also have to look at it from the practical point of view of the public. The reality is these claims are very broad, and they cover a large slot of hearing aid technology. The idea that custom ear molds is non-obvious in these claims almost belies common sense from the perspective of the public as to what the patent system should be allowed to do. Correct me if this is wrong, but my takeaway from Cheneb was that it was describing an acoustic coupler that was malleable and therefore it was not a fixed, custom-fitted device, but rather it was a device sort of like earplugs, which would fit the canal when you pushed it in. Is that fair to say? That is fair to say. So, when it's described, when Cheneb is describing custom-fitting, it is describing the disadvantages of custom-fitting vis-a-vis its own idea of a malleable substance, right? Correct. But it's not teaching away, it's just saying that these are some of the problems that custom ear molds have. And why ours is better. Right, and this is always done when you're drafting patent applications. You're always trying to argue that but that doesn't mean you're excluding it from claims scope. That doesn't mean that you're teaching away in terms of the prior art. But your argument really isn't that Cheneb teaches custom use so much as it is that Cheneb tells us that custom-fitting was around for a long time, right? That's correct. You're not relying on Cheneb as teaching that particular art. Now, and one last point and then I'll stop. We hear a lot about the disadvantages of Cheneb. It supposedly causes aesthetic problems. The design community would never embrace it. Well, we know that technological compatibility is the test for combination. Combination is a factual determination of the board. And this idea that it's somehow aesthetically unpleasing or it causes damage to the ear really doesn't go to the issue of the technological compatibility. We're not talking about bodily incorporation. That's not the law. We're talking in re mutat type of concept incorporation. We submit that the combination was proper. It was a factual determination of the board that should be sustained. I have no more. Thank you. Thank you, Your Honor. I'd like to turn to the dependent claims and if I have more time to go to the independent claims. On the disposable issue, my friend here has said that there's nothing to say in the reference that it can't be removed and replaced. Again, that is not an affirmative teaching in the art that there are disposable components. There's a reference to a couple of elements that are disposable or that he says can be. But that again, there's nothing in the record that says that one skilled in the art would understand from that that other components could be made disposable. There is nothing in the prior art cited by the board. There's nothing in the prior art cited by the board that teaches that element. The most they can say is it doesn't prohibit it. That is different from saying that the reference teaches that element. That element is missing from the cited prior art and it is therefore not present in the prior art that was relied on by the board and therefore cannot serve as the basis for an obviousness determination. The fact that there's nothing in the record that says that it can't be removed and replaced does not establish affirmatively that it can be removed and replaced. That's what our patent claims require. Now was Siemens part of the record in this case? It's not one of the references that was relied on as the combination. The argument, I think and I don't have the brief right in front of me, but I thought that the appellees were arguing that Siemens as well as Shanib taught the combination of disposable Not in this particular I think there was a reference to another one that was I believe Posen that's on the disposable element Siemens was cited in the 1357 case but not for the disposable My understanding and I don't want to say for sure, but my understanding is that that reference is not cited as teaching the disposable element. There was a reference to one of the elements being taught which is the Posen element The Posen reference was cited as teaching one of the disposable elements here and you can find that I have the reference but I do not believe that Siemens was in that. If I might turn to the custom ear mold even if the court doesn't want to go so far as to say it teaches away the issue is whether or not one skilled in the art would understand and would be motivated to use custom ear mold from the combination that the board asserted here and I would take issue with my opponent when he says that they are not relying on Shanib for teaching the custom ear mold. That is they are relying on that. It's the combination of Shanib and Ryder that is taught as teaching this patent and Shanib is therefore a part of that reference that is used to teach the custom ear mold and in fact Shanib doesn't teach custom ear mold it teaches away but at a bare minimum it does not motivate one skilled in the art to come up with an invention combining Ryder with Shanib that uses custom ear mold it doesn't do that and you can find that on page 43 of the joint appendix where they are relying on Shanib as teaching the custom ear mold so again even if the court doesn't want to go so far as to say it's a teaching away that doesn't matter because they still need and they meaning the board and the requester still need to show that one skilled in the art would have been motivated from the cited references the combination of Ryder and Shanib to use custom ear mold and that motivation is absent from this record so just to recap we think that on the independent claims there is nothing in the prior art that discloses the sufficiently rigid connector that can be used to remove and insert the in canal component that contains the speaker Shanib does not have that component because while it may connect to the speaker and does connect to the speaker there is no other end of Shanib's handle that is the connector or is attached to anything that is external which is the connector part of this patent so for that reason and for the reasons on the independent claims we would urge the court to reverse the board's determination in both cases. Just real quickly before you sit down if I could bring you back to the custom issue and I think you addressed this but I want to make sure I understand your argument so assume that we conclude that Shanib let's assume we conclude that Shanib does not favor custom earpieces but it says that this has been the practice for years to use custom earpieces isn't it fair to say that that teaches a person of skill in the art that custom is an option that is frequently employed and it would be something that if combined with something else would be a permissible combination even though Shanib itself is not advocating the use of custom for the reasons given I would say that Shanib is not advocating the use of custom even if it's not advocating that isn't it teaching it in the sense that it's saying this is in the prior art this is all over the place this has been done for years when I advocate something I'd like to think that I'm teaching it and I don't think that the reference can both advocate not using them and teach someone to use them I think that it's clear that Shanib and your honor described Shanib correctly and I think we all agree that Shanib was not a custom ear mold and it was teaching you not to do that so I don't see how that can be also relied on as teaching one to use something that it is advocating there's a difference between teaching one not to and teaching one that there's an alternative if you don't have to it's doing both in this case it's teaching one not to and it's telling you not to do it also it says that it is desirable to eliminate the need for custom ear pieces thank you your honor I would move both parties and both cases are submitted